1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  GREGORY A. OTT
   Deputy Attorney General
5  JULIET B. HALEY, State Bar No. 162823
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5960
    Fax:  (415) 703-1234
8   Email:  Juliet.Haley@doj.ca.gov

9  Attorneys for Respondent

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                     SAN JOSE DIVISION

14

15 **JOHNNY L. SMALL,**                    C 07-5133 RMW (PR)

16                        Petitioner,     **RESPONDENT'S ANSWER
                                          TO THE COURT'S ORDER
                                          TO SHOW CAUSE**
17         v.

   **M.S. EVANS, Warden,**
18
                          Respondent.
19

20

21         Respondent hereby provides this Answer to the Order to Show Cause why the petition

22 should not be granted.

23                              **I.**

                             **CUSTODY**
24

25         Petitioner Johnny L Small is lawfully in the custody of respondent within the meaning of

26 the federal habeas corpus statute, 28 U.S.C. §§ 2241(c)(3) and 2254(d), pursuant to a valid judgment

27 of the Santa Clara County Superior Court, a jury having found petitioner guilty of aggravated sexual

28 assault of a child under the age of 14 and 10 years younger than petitioner (Cal. Pen. Code, § 269,

   subd. (a)) in that he committed forcible rape (Cal. Pen. Code, § 261, subd. (a)(2); Count 1)) and

forcible oral copulation (Cal. Pen. Code, § 288a, subd. (c)(2); Count 2); lewd and lascivious acts on a child under the age of 14 (Cal. Pen. Code, § 288, subd. (a)), during which petitioner had substantial sexual contact with the victim  (Cal. Pen. Code, § 1203.066, subd. (a)(8));-- oral copulation with a minor under the age of 16 (Cal. Pen. Code, § 288a, subd. (b)(2)); -- sexual penetration of a person under the age of 16 by a defendant over 21 (Cal. Pen. Code, § 289, subd. (i)); and a lewd or lascivious act on a child under the age of 14 or 15 (Cal. Pen. Code, § 288, subd. (c)(1)).  CT 74-80.

The jury also found true that petitioner had suffered one prior strike conviction (Cal. Pen. Code, §§ 667, subds. (b)-(i), 1170.12), and had served two prior prison terms (Cal. Pen. Code, § 667.5, subds. (a) & (b)).  CT 80-81.  Petitioner was sentenced to state prison for a determinate term of 18 years and 8 months and a consecutive, indeterminate term of 60 years to life.  CT 383-384.

## II.

## PROCEDURAL ISSUES

Petitioner has exhausted his state remedies as to the claims herein presented and the petition is timely.  28 U.S.C. § 2244(d).

## III.

## DENIAL OF CLAIMS

Respondent denies that petitioner suffered any deprivation of constitutional rights supporting habeas corpus relief.  Specifically, respondent denies that there is insufficient evidence that petitioner committed the crimes for which he was convicted; that his due process rights were violated because of the trial court's failure to instruct the jury sua sponte on the meaning of the the terms "force" and "forcible"; and on the failure to instruct the jury that it could only convict petitioner of the less serious of two offenses; that petitioner received ineffective assistance of counsel because counsel failed to investigate or present evidence of an alibi defense; was ineffective in conducting the preliminary hearing examination; and in failing to present a defense that the charges were not sufficiently specific.  Respondent also denies that appellate counsel was ineffective in failing to raise all of these issues and that petitioner is entitled to relieve because the prosecutor with held evidence that was material and exculpatory.  Last, Respondent denies that petitioner is

1    entitle to relieve because he is actually innocent.

2    Respondent denies that these claims entitle petitioner to relief because he has failed to

3    establish that the state court's denial of these claims was either an unreasonable application of

4    clearly established Federal law as determined by the United States Supreme Court or resulted in a

5    decision based on an unreasonable determination of the facts in light of the evidence presented to

6    the state courts. Respondent incorporates by reference the accompanying memorandum of points

7    and authorities in support of this denial.

8    ## IV.

9    ## TRANSCRIPTS AND RECORDS

10    Copies of the transcript of petitioner's trial together with copies of the briefs filed on

11    direct appeal have been lodged with this Court and petitioner's state habeas petition filed in the

12    California Supreme Court. These documents constitute all relevant documents and hearing

13    transcripts necessary for this Court's decision. So far as respondent is aware, all relevant state

14    reported proceedings have been transcribed. Rule 5, Rules Governing Section 2254 Case.

15    Dated: June 26, 2008

16    Respectfully submitted,

17    EDMUND G. BROWN JR.
     Attorney General of the State of California

18    DANE R. GILLETTE
     Chief Assistant Attorney General

19
20    GERALD A. ENGLER
     Senior Assistant Attorney General

21    GREGORY A. OTT
     Deputy Attorney General

22

23    /s/ Juliet B. Haley

24    JULIET B. HALEY
     Deputy Attorney General
25    Attorneys for Respondent

26

27    20118873.wpd
     SF2007403162

28

Respondent's Answer To The Court's Order To Show Cause - C 07-5133 RMW (PR)

3

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Johnny L. Small v. M.S. Evans, Warden**

No.:   **C 07-5133 RMW (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On June 30, 2008, I served the attached

**RESPONDENT'S ANSWER TO THE COURT'S ORDER TO SHOW CAUSE;**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER;**

**NOTICE OF LODGING OF, AND INDEX TO, EXHIBITS**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004, addressed as follows:

**Johnny L. Small**
**J - 44318**
**Salinas Valley State Prison**
**B3-145 L**
**P.O. Box. 1050**
**Soledad, CA  93960-1060**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 30, 2008, at San Francisco, California.

| | |
|---|---|
| J. Wong | |
| Declarant | Signature |

20119014.wpd

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  GREGORY A. OTT
   Deputy Attorney General
5  JULIET B. HALEY, State Bar No. 162823
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5960
    Fax:  (415) 703-1234
8   Email:  Juliet.Haley@doj.ca.gov

9  Attorneys for Respondent

10                    IN THE UNITED STATES DISTRICT COURT

11                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                            SAN JOSE DIVISION

13

    JOHNNY L. SMALL,                          C 07-5133 RMW (PR)
14
                              Petitioner,
15
             v.
16
    M.S. EVANS, Warden,
17
                              Respondent.
18

19
        **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**
20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3 INTRODUCTION ................................................................................ 1

4 STATEMENT OF THE CASE ........................................................... 3

5 STATEMENT OF FACTS ................................................................. 4

6 STANDARD OF REVIEW ................................................................ 8

7 ARGUMENT ..................................................................................... 9

8     **I.**   **THE STATE COURT WAS NOT UNREASONABLE IN
9         REJECTING PETITIONER'S CLAIM THAT HIS RIGHT TO
        DUE PROCESS WAS DENIED WHEN THE SUPERIOR COURT
        FOUND THERE WAS SUFFICIENT EVIDENCE TO REQUIRE
10         PETITIONER TO STAND TRIAL ON THE CHARGES** ........... 9

11    **II.**   **THE STATE COURT WAS NOT UNREASONABLE IN
        REJECTING PETITIONER'S SUFFICIENCY OF THE
12         EVIDENCE CLAIM** ............................................................. 10

13   **III.**   **THE STATE COURT'S REJECTION OF PETITIONER'S
        CLAIM OF INSTRUCTIONAL ERRORS WAS NOT
14         OBJECTIVELY UNREASONABLE** ...................................... 11

15   **IV.**   **THE STATE COURT WAS NOT UNREASONABLE IN
        REJECTING PETITIONER'S CLAIM THAT HE WAS DENIED
16         DUE PROCESS BY THE FAILURE TO INSTRUCT THE JURY
        THAT IT COULD ONLY CONVICT HIM OF THE LESS
17         SERIOUS OF TWO OFFENSES** ........................................... 14

18    **V.**   **PETITIONER WAS NOT DENIED DUE PROCESS BY THE
        TRIAL COURT'S FAILURE TO INSTRUCT ON LESSER
19         INCLUDED OFFENSES** ....................................................... 16

20   **VI.**   **THE STATE COURT WAS NOT UNREASONABLE IN
        REJECTING PETITIONER'S CLAIM THAT HE WAS DENIED
21         THE ASSISTANCE OF COUNSEL BY COUNSEL'S FAILURE
        TO PRESENT EVIDENCE OF AN ALIBI DEFENSE OR IN
22         CONDUCTING HIS PRELIMINARY HEARING; NOTIFYING
        PETITIONER OF THE CHARGES; AND IN FAILING TO
23         CHALLENGE THE SPECIFICITY OF THE CHARGES** .......... 17

24   **VII.**   **THE STATE COURT WAS NOT UNREASONABLE IN
        REJECTING PETITIONER'S CLAIM THAT APPELLATE
25         COUNSEL WAS INEFFECTIVE** .......................................... 20

26  **VIII.**  **THE STATE COURT REASONABLY REJECTED
        PETITIONER'S CLAIM OF *BRADY* ERROR** ..................... 21

27

28   **IX.**   **PETITIONER'S APPARENT CLAIM OF ACTUAL
        INNOCENCE IS NOT COGNIZABLE** .................................. 22**

**TABLE OF CONTENTS  (continued)**

**Page**

CONCLUSION                                                                                                   24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1                 **TABLE OF AUTHORITIES**

2                                                     **Page**

3   **Cases**

4

5   *Aponte v. Gomez*
   993 F.2d 705 (9th Cir. 1999)                      16

6   *Babbit v. Calderon*
   151 F.3d 1170 (9th Cir. 1998)                    18
7

  *Bailey v. Newland*
8   263 F.3d 1022 (9th Cir. 2001)                    21

9   *Beck v. Alabama*
   447 U.S. 625 (1980)                              17
10

  *Bell v. Cone*
11   535 U.S. 685 (2002)                             18

12   *Boag v. Raines*
   769 F.2d 1341 (9th Cir 1985)                     19
13

  *Brady v. Maryland*
14   373 U.S. 83 (1963)                           21, 22

15   *Brecht v. Abrahamson*
   507 U.S. 619 (1993)                            9
16

  *Carey v. Musladin*
17   127 S.Ct. 649 (2006)                         8, 12

18   *Coleman v. Alabama*
   399 U.S. 1 (1970)                             19
19

  *Cooks v. Spalding*
20   660 F.2d 738 (9th Cir. 1981)                    12

21   *Early v. Packer*
   537 U.S. 3 (2002) (per curiam)                 8
22

  *Engle v. Isaac*
23   456 U.S. 107 (1982)                           9

24   *Estelle v. McGuire*
   502 U.S. 62 (1991)                            11
25

  *Evitts v. Lucey*
26   469 U.S. 387 (1985)                           21

27   *Fry v. Pliler*
   ___ U.S. ____ , 127 S.Ct. 2321 (2007)       9
28

**TABLE OF AUTHORITIES**  (continued)

Page

*Gerstein v. Pugh*
420 U.S. 103 (1975)                                    9

*Hasan v. Galaza*
254 F.3d 1150 (9th Cir. 2001)                          18

*Henderson v. Kibbe*
431 U.S. 145 (1977)                                    11

*Hernandez v. Small*
282 F.3d 1132 (9th Cir. 2002)                          4

*Herrera v. Collins*
506 U.S. 390 (1993)                                    22

*Jackson v. Superior Court*
62 Cal.2d 521 (1965)                                   19

*Jackson v. Virginia*
443 U.S. 307 (1979)                                    10

*James v. Borg*
24 F.3d 20 (9th Cir. 1994)                             19

*Jones v. Barnes*
103 S.Ct. 3308 (1983)                                  21

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005)                          10

*Kane v. Garcia Espitia*
546 U.S. 9 (2005) (per curiam)                         17

*Lockyer v. Andrade*
538 U.S. 63 (2003)                                     9

*Miller v. Keeney*
882 F.2d 1428 (9th Cir.1989)                           21

*Miller-El v. Cockrell*
357 U.S. 322 (2003)                                    9

*People v. Bland*
28 Cal.4th 313, 121 Cal.Rptr.2d 546, 48 P.3d 1107 (2002)    12

*People v. Crosby*
58 Cal.2d 713 (1962)                                   20

*People v. Gordon*
165 Cal.App.3d 839 (1985)                              20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES  (continued)**

Page

*People v. Griffin*
33 Cal.4th 1015 (2004)                                                    12

*People v. Johnson*
26 Cal.3d 557 (1980)                                                     10

*Phillips v. Woodford*
267 F.3d 966 (9th Cir. 2001)                                             22

*Roe v. Flores-Ortega*
528 U.S. 470 (2000)                                                      18

*Rutledge v. United States*
517 U.S. 292 (1996)                                                      16

*Schlup v. Delo*
513 U.S. 298 (1995)                                                      22

*Shepherd v. Nelson*
432 F.2d 1045 (9th Cir. 1970)                                            12

*Siripongs v. Calderon*
133 F.3d 732 (9th Cir. 1998)                                             18

*Solis v. Garcia*
219 F.3d 922 (9th Cir. 2000)                                             17

*Strickland v. Washington*
466 U.S. 668 (1984)                                                   17-19, 21

*Strickler v. Greene*
527 U.S. 263 (1999)                                                      22

*Teague v. Lane*
489 U.S. 288 (1989)                                                      17

*Turner v. Calderon*
281 F.3d 851 (9th Cir. 2002)                                             21

*United States v. Birtle*
792 F.2d 846 (9th Cir.1986)                                              21

*United States v. Dierling*
131 F.3d 722 (8th Cir. 1997)                                             22

*United States v. Somsamouth*
352 F.3d 1271 (9th Cir. 2003)                                            12

*Walker v. Endell*
850 F.2d 470 (9th Cir. 1987)                                             11

## TABLE OF AUTHORITIES  (continued)

**Page**

*Williams v. Calderon*
52 F.3d 1465 (9th Cir. 1995)                                    18

*Williams v. Taylor*
529 U.S. 362 (2000)                                            8, 9

*Windham v Merkle*
163 F.3d 1092 (9th Cir. 1998)                                   17

*Woodford v. Visciotti*
537 U.S. 19 (2002) (per curiam)                                  9

*Yarborough v. Gentry*
540 U.S. 1 (2003) (per curiam)                                  18


**Constitutional Provisions**


United States Constitution
        Sixth Amendment                                        19
        Fourteenth Amendment                                10, 21


**Statutes**


California Penal Code
        § 261, subd. (a)(2)                                     3
        § 269, subd. (a)                                        3
        § 288, subd. (a)                                        3
        § 288, subd. (c)(1)                                     3
        § 288a, subd. (b)(2)                                    3
        § 288a, subd. (c)(2)                                    3
        § 289, subd. (i)                                        3
        § 667, subds. (b)-(i)                                   3
        § 667.5, subds. (a) & (b)                               3
        § 667.61, subds. (b) & (e)                              3
        § 995                                                  10
        § 1170.12                                               3
        § 1203.066, subd. (a)(8)                                3
        § 12022.53                                              3
        § 12022.8                                               3

United States Code, Title 28
        § 2254(d)                                               8
        § 2254(d)(1)                                           18
        § 2254(d)(2)                                           12
        § 2254(e)(1)                                          4, 9

**TABLE OF AUTHORITIES  (continued)**

**Page**

**Other Authorities**

*Merriam-Webster's Collegiate Dict.* (10th ed. 1999) p. 454                    14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  GREGORY A. OTT
   Deputy Attorney General
5  JULIET B. HALEY, State Bar No. 162823
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5960
     Fax:  (415) 703-1234
8    Email:  Juliet.Haley@doj.ca.gov

9  Attorneys for Respondent

10            IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13

14  JOHNNY L. SMALL,                        C 07-5133 RMW (PR)

15                          Petitioner,     **MEMORANDUM OF POINTS
                                            AND AUTHORITIES IN
16         v.                               SUPPORT OF ANSWER**

17  M.S. EVANS, Warden,

18                          Respondent.

19

20                        **INTRODUCTION**

21         In the fall of 2000, Monica Doe lived in a Sunnyvale townhouse with her  daughters,

22  thirteen-year-old Paris and eight-year-old Je'Mica. At the time, Paris was self-conscious of her

23  height, which was around six feet, and embarrassed about her weight.  She felt neglected by her

24  father because he had remarried and had other children.

25         Monica met petitioner in October of 2000.  A couple of months later, she allowed him to

26  move into her home.  Within a few months, petitioner had impregnated Monica.  Around the same

27  time, petitioner started molesting Paris when Monica was away from the apartment.  Monica took

28  Paris to a doctor because she was having irregular menses. They learned that Paris was pregnant,

1  and she had an abortion. Paris initially told Monica that she had been having sexual intercourse with

2  a 15-year-old boy named Steven Johnson.  Using information provided by Paris, Monica tried

3  unsuccessfully to locate Johnson.

4      After failing to find Johnson, Monica called the police, and Officer Anton came to the

5  house. Paris told Officer Anton that Steven Johnson had impregnated her and purported to give him

6  information that would assist in locating him.  A few days later, Detective Powell came to the house

7  and interviewed Paris.  He told her that his attempts to locate  Johnson had been unsuccessful and

8  that he did not believe Johnson existed.  Paris eventually admitted that petitioner had impregnated

9  her.  She described several instances when petitioner molested her.  That same day, Paris went to

10  the police station where she made a pretext telephone call to petitioner.  During the call, petitioner

11  admitted he had had sexual intercourse with Paris. Following the telephone conversation, petitioner

12  was arrested.  In an interview with Detective Powell, petitioner admitted his sexual activity with

13  Paris and that he knew it was wrong because of her age.  He also admitted that he was probably the

14  father of her child.  He indicated that there had been a greater number of incidents than Paris had

15  recounted.  He also described other forms of sexual activity that Paris had not mentioned to Powell.

16      Later that same week, Paris recanted, telling her mother that petitioner never molested her.

17  Monica tried unsuccessfully to have the charges against petitioner dropped.   At trial, despite

18  petitioner's admission in the pretext call and his confession to Powell, Paris continued to deny

19  petitioner had molested her. She claimed she made up the story about petitioner because he was

20  hurting her mother by having an affair with a woman named Aisha.  (In December of 2001, Monica

21  had her baby whom she named Aisha.)

22      The jury convicted petitioner on all counts including aggravated sexual assault of a child

23  by means of forcible rape and forcible oral copulation as well as the alternative charges of lewd and

24  lascivious conduct on a child.

25      In this petition, petitioner challenges the sufficiency of the evidence supporting the

26  charges,  the failure of the trial court to sua sponte define the terms "force" and "forcible" for the

27  jury, the failure of the trial court not to instruct the jury that it could not convict petitioner of both

28  the greater and the lesser alternative charges.  Petitioner also attacks trial counsel's performance,

1   including, but not limited to counsel's failure to present an alibi defense.  Petitioner  also contends

2   that the prosecutor withheld material exculpatory evidence, that appellate counsel was ineffective

3   and that petitioner is actually innocent of the charges.  The state court reasonably rejected these

4   claims.

5

6                              **STATEMENT OF THE CASE**

7           On October 29, 2001, the Santa Clara County District Attorney filed an information

8   accusing petitioner Johnny Leon Small of the following:  Counts 1 and 2 --  aggravated sexual

9   assault of a child under the age of 14 and 10 years younger than petitioner (Cal. Penal Code, § 269,

10  subd. (a)) in that he committed forcible rape (Cal. Penal Code, § 261, subd. (a)(2); Count 1)) and

11  forcible oral copulation (Cal. Penal Code, § 288a, subd. (c)(2); Count 2); Counts 3 through 6 -- a

12  lewd and lascivious act on a child under the age of 14 (Cal. Penal Code, § 288, subd. (a)), during

13  which petitioner had substantial sexual contact with the victim  (Cal. Penal Code, § 1203.066, subd.

14  (a)(8)); Count 7 -- oral copulation with a minor under the age of 16 (Cal. Penal Code, § 288a, subd.

15  (b)(2)); Count 8 -- sexual penetration of a person under the age of 16 by a defendant over 21 (Cal.

16  Penal Code, § 289, subd. (i)); and Count 9 -- a lewd or lascivious act on a child under the age of 14

17  or 15 (Cal. Penal Code, § 288, subd. (c)(1)).  CT 74-80.  As to Count 3, the information alleged that

18  petitioner  inflicted great bodily injury on the victim. (Cal. Penal Code, §§ 667.61, subds. (b) & (e);

19  12022.53; 12022.8.  CT 77.  The information also alleged that petitioner had suffered one prior

20  strike conviction (Cal. Penal Code, §§ 667, subds. (b)-(i), 1170.12), and had served two prior prison

21  terms (Cal. Penal Code, § 667.5, subds. (a) & (b)).  CT 80-81.

22          On February 21, 2002, Count 8 was stricken on the prosecutor's motion, and the

23  information was renumbered.  CT 193, 195.

24          On February 22, 2002, a jury found petitioner guilty as charged in all counts, but found

25  untrue the great bodily injury allegation as to Count 3.  CT 197-204, 206.  That same day, petitioner

26  admitted the prior strike conviction in exchange for the striking of the two prior prison term

27  allegations.  CT 206-207.

28          On June 18, 2002, petitioner filed a motion for a new trial.  CT 319-330.  On June 24,

1  2002, petitioner's request for self-representation was granted.  CT 331-337, 343.  On July 29, 2002,

2  the trial court denied the motion for new trial.  CT 383.

3         Also on July 29, petitioner was sentenced to state prison for a determinate term of 18 years

4  and 8 months and a consecutive, indeterminate term of 60 years to life.  CT 383-384.  The trial court

5  imposed the 12-year middle term on Count 3, plus 4 years (one-third of the middle term) on Count

6  6, and 16-month terms (one-third of the middle terms) for Counts 7 and 8.  RT 383-384, 387-388.)

7  The court stayed the terms imposed on Counts 4 and 5 pursuant to California Penal Code section

8  654. The trial court also imposed terms of 30 years to life on Counts 1 and 2. CT 383, 385-386.

9         Petitioner filed a notice of appeal on July 29, 2002.  CT 355.  The California Court of

10  Appeals affirmed the judgment on December 30, 2003.  Petitioner filed a petition for review in the

11  California Supreme Court which was denied on March 17, 2004.  Thereafter, petitioner filed several

12  habeas petitions in the Santa Clara Superior Court, as well as the Court of Appeal and the California

13  Supreme Court.  The Santa Clara Superior Court denied petitioner's habeas petition in a written

14  decision.  The appellate courts summarily denied his petitions.

15

16  **STATEMENT OF FACTS**

17         The state court of appeal found the facts to be as follows.  This summary constitutes a

18  factual finding that is presumed correct under 28 U.S.C. § 2254(e)(1).  *Hernandez v. Small,* 282

19  F.3d 1132, 1135 n. 1 (9th Cir. 2002).

20     When 14-year-old P. turned out to be pregnant in June 2001, she gave two accounts of the
   person who impregnated her. First she told her mother Monica and the police that a 15-
21     year-old boy named Steven Johnson was the father. Then, when Steven could not be
   located, she told the police that it was defendant, Monica's boyfriend. A week later P.
22     recanted this identification. At trial in February 2002, P. identified Steven as the father.
   Defendant did not testify at trial. The evidence against defendant included his own
23     admissions to the police and a tape-recorded telephone conversation between defendant
   and P.
24
   Carl Lewis, an expert, testified about the child sexual abuse accommodation syndrome.
25     He explained that sexually abused children often exhibit several types of behavior. The
   crime occurs in secrecy and isolation. The offender reinforces the secrecy by warning of
26     adverse consequences. Children are helpless to resist the advances of an adult on whom
   they depend. They may have an emotional relationship with the offender. Children feel
27     entrapped and learn to accommodate the situation, sometimes by detaching themselves
   mentally or pretending to be asleep. Disclosure is often delayed. Retraction may follow
28     disclosure when there are adverse consequences, such as the reaction of adults, the arrest

of the offender, or protective custody for the child.

P. turned 14 in April 2001. She was already five feet 11 inches tall. She lived with her mother, her younger sister, and defendant. Defendant had moved into their two-story Sunnyvale townhouse at the end of 2000. Defendant was born March 5, 1972. When he moved in he was working as a carpenter. He was disabled by a back injury due to a car accident in January 2001. He resumed part-time work in March 2001, the same month that he impregnated Monica. Monica worked two days a week as a registered nurse. When P. came home from school around 3:30 p.m., defendant was home. P. thought of defendant as a father. They engaged in family activities.

Monica asked defendant to move out of her house in early June 2001 because she wanted him to get a job. Defendant continued to visit and occasionally spent the night.

When P.'s menstrual cycle became irregular in April 2001, she told her grandmother she was having a discharge. P. was afraid to tell her mother Monica. Monica was strict and told her she was too young to have sex with boys. Monica regularly asked if she was having sex. P. regularly denied it. P.'s grandmother told Monica. Monica took P. to see the doctor. Defendant accompanied them although he no longer lived with them. On June 29, 2001, a doctor reported that P. was pregnant.

A.  Steven Johnson

P. told her mother that the father of her child was a 15-year-old boy named Steven. Her mother wanted to talk to him. P. took her to an apartment complex where he used to live. The manager could not tell P.'s mother who lived there.

At trial in February 2002, P. testified as follows. She had known Steven since the fourth or fifth grade. He lived in East Palo Alto. P. used to walk to Steven's apartment after her mother drove her to the nearby house of a female friend. In early April 2001, P. and Steven were kissing at his apartment. He performed oral sex on her. He moved up as though to kiss her and put his penis inside of her. It was painful. She told him to stop. He did not stop. He tried to push him off. She did not know if he ejaculated. She went to the restroom and cried when she saw blood in her vaginal area. He apologized. She cleaned herself up and left his apartment. She ignored him for a while. Two or three weeks later, after he apologized again, they ended up having sexual intercourse. They had sex one more time. In the middle of May 2001, she went to his apartment. He orally copulated her and tried to force himself on her, saying she was going to "give him some." She left and did not see him again.

When P.'s mother was unable to locate Steven, she called the police. On July 5, 2001, Officer Anton came to their residence and talked to P. P. told Anton about Steven. At trial P. admitted that she had lied to Anton about Steven forcing himself on her because she did not want her mother to know she was having sex. P. admitted that she lied about Steven's address and his residence. She did not want her mother to find out where he really lived. P. admitted that she had lied to Officer Anton about Steven being on probation in Santa Clara County. He was really on probation in San Mateo County.

B.  Defendant

P. had an abortion a few days after her July 5, 2001 interview with Officer Anton.

On July 10, 2001, Detective Chris Powell of the Sunnyvale Department of Public Safety arranged to talk to P. downstairs at her house while her mother waited upstairs. Powell and P. talked for about an hour. The interview was not tape-recorded. After beginning

1    with general questions, Powell confronted P. with his inability to locate Steven. Powell
     said he believed Steven did not exist. There was no record of him at the high school that
2    P. said he attended or at the apartments where P. said he had lived. Powell told her that
     the allegations were serious and that they need to find the person responsible. P. admitted
3    there was no Steven Johnson. She named defendant as the father of her child. P. told
     Powell about several sexual encounters with defendant underlying the counts described
4    below.

5    By the end of their interview, P. was crying. She felt guilty about betraying her pregnant
     mother by having sex with her mother's boyfriend. She was concerned about her mother's
6    reaction. She said defendant was the only person she had sex with.

7    After this interview, P. agreed to Powell's request to call defendant on the telephone the
     same day, July 10, 2001, from the police station. Powell was in the room with P. listening
8    to the call. The conversation was tape-recorded. Powell suggested that P. begin the call
     on the premise that she was feeling bad about the abortion and was thinking about telling
9    her mother. He also suggested asking why defendant had not used a condom.

10   P. began the conversation as suggested by Powell. P. alternated between asking defendant
     why he had done what he did with her and telling defendant that he was hurting her
11   mother by being cold to her and by seeing another woman named Aisha. Defendant
     reacted by saying that P. was "tripping" and "talking crazy." He said that some of her
12   statements were lies and that she was just trying to "start some shit" that would cause
     people to get hurt or killed.
13
     During the conversation defendant also acknowledged having a sexual relationship with
14   P. He said that what happened between them "was our business. What's done is done."
     When asked why he did not use a condom, he answered, "Why didn't I? I don't know. I
15   don't know. And why didn't you make me?" When P. said that defendant "came onto" her,
     he said, "we both came onto each other ... because you could have said no." When asked
16   why defendant was trying to make it seem like her fault, he answered, "basically as life
     it, it's both of our faults. And you not, and you know what I'm saying, as many times as
17   we, and you know what I'm saying, did, did, did whatever, you could have said no."
     When she claimed she did, he denied it and asked, "You say no all the time?"
18
     Defendant said "that what, what both of us did was wrong. You know what I'm saying
19   and I should know already. You know, ''cause I'm the older one. I should know better."
     He said he did not stop because he thought she liked it. She kissed him back and told him
20   that she loved him. Later defendant repeated that he was old enough to know better, but
     said that she was also old enough to know better and to discourage him.
21
     Defendant asked her not to tell anyone and to promise to talk to him in person. He said
22   he loved them all and wanted to move back in with them.

23   After the telephone conversation, Detective Powell had defendant arrested the same day,
     July 10, 2001. Powell took defendant to police headquarters. Defendant agreed to talk to
24   Powell after being read his rights. When Powell first told defendant that P. had accused
     him of sexually molesting her, defendant denied it. He said that P. had just threatened him
25   with such accusations on the telephone because she was upset about his breakup with her
     mother. Defendant admitted having a sexual relationship with P. after Powell told him that
26   he had listened to and tape-recorded defendant's telephone conversation with P. Defendant
     said he knew it was wrong because of her age, but he felt that P. was partly responsible
27   because she was a willing participant and she was old enough to make her own choices.
     Within a week of defendant's arrest, P. told her devastated mother that it was not
28   defendant. P. wrote defendant a letter of apology. At trial her mother testified that she had

1    to accept whatever P. said.

2    At trial P. stated that she had fabricated the story about defendant to hurt him because he
     was hurting her mother. He was hurting her by cheating on her with another woman
3    named Aisha. P. said that she had heard a similar story about someone else and just added
     in defendant's name.
4
     1.  Counts 1 (aggravated sexual assault) and 4 (lewd touching) [FN2]
5
          FN2. As explained below ( *post,* at p. 12, 299 P.2d 243), counts 4 and 5
6         charging lewd conduct were alternative charges to counts 1 and 2 charging
          aggravated sexual assault.
7
     In February 2001, P.'s mother took an overnight trip to Reno. Defendant was the adult in
8    charge of P., her sister, and two of defendant's young nephews. They rented movies and
     fell asleep on the couch. P. awakened to defendant touching her breasts under her shirt.
9    She was half asleep and thought she was dreaming. Defendant unbuttoned her pants, put
     his finger in her vagina, and moved it around. She told him to stop. He told her to be quiet.
10   He told her to go upstairs. She initially hesitated and then went along. He did not drag her.

11   According to Powell, P. said that defendant took her directly to the master bedroom. At
     trial P. recalled telling Detective Powell that defendant first took her upstairs to her room
12   and tried to push her onto her bed, but his nephew Marcel was sleeping in the bed, so
     defendant took her into the master bedroom.
13
     In the master bedroom, defendant removed her pants and his pants and pushed her onto
14   the bed. P. tried to resist him and said no, but he put his penis in her vagina for a couple
     of minutes. Defendant did not threaten her with physical force or harm. When it was over
15   P. got up and saw blood coming from her vagina. Defendant apologized. He told her not
     to worry about it and not to tell anybody what they had done.
16
     In P.'s recorded telephone conversation with defendant, she said that she did not "come
17   onto" him the first time. He said that he came up to her and she woke up and sat there.
     They were in the living room when she grabbed his hand. She denied it. He agreed that
18   they went upstairs. She said that he told her "come on," he grabbed her hand and walked
     her upstairs. He questioned that he forced her upstairs. "Okay so you not old enough to
19   snatch your hand back then, what you doing. Yes you are. You old enough and you big
     enough." She said that when they got upstairs, defendant told her he wanted her so bad.
20   He tried to push her onto her bed but Marcel was there. She said no and pushed him back.
     Defendant said he did not remember that. He said it was "all bad" and "it shouldn't have
21   happened." When asked why he did not stop, he replied, "Did you force me to stop?" She
     said she told him to stop. He disagreed. She said that he did not rape her, but he forced
22   himself on her.

23   2.  Counts 2 (aggravated sexual assault) and 5 (lewd touching)

24   About two weeks after the first incident, defendant and P. were together in their residence.
     P. was lying on the couch. He approached her and began kissing her. He held her hands
25   over her head and kissed her. He lifted P.'s skirt and orally copulated her. P. tried to move
     away and told him no. Her told her not to be afraid. As he continued to perform oral sex,
26   she resigned herself to it and had an orgasm.

27   3.  Counts 3, 6 (lewd touching), and 7 (oral copulation)

28   P. told Detective Powell that they had sex about ten times between February and July

2001, always in their apartment, sometimes when her mother was home. Four times involved intercourse, the rest involved oral copulation. Defendant did not wear a condom. Once he ejaculated inside her. The other times he ejaculated in his hand. P. was not sure about the specific dates. After the third time she stopped resisting. She thought she was falling in love with defendant.

After Detective Powell confronted defendant with his taped telephone conversation defendant admitted having sex with P. about 15 times. He said they had intercourse about five times. The other times he orally copulated her and digitally penetrated her or she masturbated him. He wore a condom twice and ejaculated into his hand other times.

The prosecutor argued to the jury that count 3 related specifically to the act of sexual intercourse that impregnated P. between March 17 and 23, 2001. Sexual penetration, digital penetration, or fondling of the breasts could qualify for count 6. Count 7 was lewd touching after P. turned 14 in April 2001.

3. Count 8 (lewd touching)

The last time they had sex was on July 2, 2001. P.'s mother and sister had gone to the dentist. P. was wearing a towel after taking a shower. Defendant grabbed her. She told him no. He told her it would be the last time. He pulled her into the master bedroom and they had intercourse. He ejaculated inside of her.

Exh. C, at 2-8.

## STANDARD OF REVIEW

A federal court may grant a writ of habeas corpus to a state prisoner only if the state court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented" in the state courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a state court's decision is contrary to federal law if it "contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). If there is no Supreme Court precedent that controls a legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law. *Carey v. Musladin*, 127 S.Ct. 649, 653-54 (2006) (denying habeas relief in absence of clearly established federal law).

In order to warrant habeas relief, the state court's application of clearly established federal

law must not be merely erroneous, incorrect, or even "clear error," but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003); *see also Williams v. Taylor*, 529 U.S. at 409; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).  It is the habeas petitioner's burden to make that showing.  *Woodford,* at 25.  In the same way, a "decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 357 U.S. 322, 340 (2003).  State court factual determinations are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Even if the state court's ruling is contrary to or an unreasonable application of Supreme Court precedent, that error justifies overturning the conviction only if the error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  The *Brecht* standard applies to all § 2254 cases, regardless of the type of harmless error review conducted by the state courts. *Fry v. Pliler*, ___ U.S. ____ , 127 S.Ct. 2321 (2007).

## ARGUMENT

### I.

**THE STATE COURT WAS NOT UNREASONABLE IN REJECTING PETITIONER'S CLAIM THAT HIS RIGHT TO DUE PROCESS WAS DENIED WHEN THE SUPERIOR COURT FOUND THERE WAS SUFFICIENT EVIDENCE TO REQUIRE PETITIONER TO STAND TRIAL ON THE CHARGES**

Petitioner contends in Claim I that there was insufficient evidence presented at the preliminary hearing to hold him to answer on the charges contained in the complaint.  Pet. at p.1, Ground I.  The claim is specious.

A state prisoner can obtain federal habeas corpus relief only if he is held in violation of the Constitution, or of the laws and treaties of the United States. *Engle v. Isaac,* 456 U.S. 107, 119 (1982).  Since there is no constitutional right to a preliminary hearing, *see Gerstein v. Pugh,* 420

1 │ U.S. 103, 125 n. 26 (1975), there exists no federal claim on the merits of this issue.[1/]

2 │ **II.**

3 │ **THE STATE COURT WAS NOT UNREASONABLE IN REJECTING**
   │ **PETITIONER'S SUFFICIENCY OF THE EVIDENCE CLAIM**

4 │

5 │        Petitioner contends in Claims II and III that there was insufficient evidence to convict

6 │ petitioner of the charges.  Pet. at  p. 1 Ground II.  Specifically, he contends that there was

7 │ insufficient evidence to support the charges of forcible rape and forcible oral copulation.  He urges

8 │ that because the victim recanted at trial there was no evidence to support a finding of force.  Pet. at

9 │ p.5 Ground II.

10 │        The Due Process Clause of the Fourteenth Amendment prohibits the conviction of a

11 │ criminal defendant except upon evidence sufficient to prove every element of the offense beyond

12 │ a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). To prevail on a claim of

13 │ insufficient evidence, the defendant must show that the evidence supporting his conviction, viewed

14 │ in the light most favorable to the prosecution, is such that no rational trier of fact could have found

15 │ guilt proven beyond a reasonable doubt. *Id*. at 319, 321, 324; *see also People v. Johnson,* 26 Cal.3d

16 │ 557, 578 (1980). The prosecution need not affirmatively rule out every hypothesis except that of

17 │ guilt, and the reviewing court, faced with a record of historical facts that supports conflicting

18 │ inferences, must presume - even if it does not affirmatively appear on the record - that the trier of

19 │ fact resolved those conflicts in favor of the prosecution, and must defer to that resolution. *Wright*

20 │ *v. West*, 505 U.S. 277, 296-97 (1992); *Jackson,* 443 U.S. at 326.  On habeas review, the question is

21 │ whether the state court's application of *Jackson* was reasonable.  *Juan H. v. Allen*, 408 F.3d 1262,

22 │ 1274-75 (9th Cir. 2005).

23 │        Here, the record supports the state court's rejection of the claims. Victim Paris told police

24 │ that petitioner took her into her room and tried to push her onto the bed but Marcel was on the bed

25 │ and petitioner "couldn't push [her] down."  RT 125, 314.  At the same time Paris was "pushing

26 │ ─────────────────────────────

27 │        1.  The Santa Clara Superior Court resolved petitioner's claims of error regarding the
   │ preliminary hearing finding that having failed to make a motion pursuant to California Penal Code
28 │ § 995, any defects were waived. *See* Pet. Exh. I

Memorandum Of Points And Authorities In Support Of Answer - C 07-5133 RMW (PR)

1  [petitioner] back up." RT 125, 314.  Petitioner then pulled Paris into her mother's bedroom and

2  "was trying to have sex with [her]" while she was telling him "No," and "was trying to push him off

3  of [her]".  RT 125, 174.  These acts are clearly sufficient to support the jury's verdict of rape.

4         The same can be said regarding the charge of forcible oral copulation.  Paris told police

5  that she tried to resist petitioner but he kissed her on the mouth.  RT 178-79, 324.  He then held her

6  hands over her head, lifted her skirt and orally copulated her.  RT 179, 324.  Her statements, which

7  were believed by the jury, are clearly sufficient to satisfy the element of force.

8         Petitioner's only response is that the victim recanted at trial.  However, the jury was

9  entitled to reject her subsequent recantation in favor of her original disclosure.  Here, the jury heard

10 expert testimony on child sexual abuse accommodation syndrome, one aspect of which can be such

11 recantations.  Moreover, petitioner admitted in a pretext call to having molested Paris, and confessed

12 to the same when confronted by officers.  Given petitioner's admissions and the expert's testimony

13 a rational trier of fact could well conclude to credit her original statement to police and not her

14 subsequent recantation.  The state court was not unreasonable in so concluding.

15                                          **III.**

16     **THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM OF
       INSTRUCTIONAL    ERRORS    WAS    NOT    OBJECTIVELY**
17     **UNREASONABLE**

18        Petitioner contends in claims IV and V that his rights to due process were violated by the

19 failure of the trial court to instruct the jury *sua sponte* on the meaning of the terms "force" and

20 "forcible."  The state court's rejection of the claim was not unreasonable.

21        A challenge to a jury instruction solely as an error under state law does not state a claim

22 cognizable in federal habeas corpus proceedings.  *See Estelle v. McGuire*, 502 U.S. 62, 71- 72

23 (1991); *see, e.g.*, *Walker v. Endell*, 850 F.2d 470, 475-76 (9th Cir. 1987) (failure to define

24 "recklessness" at most error of state law where recklessness relevant to negate duress defense and

25 government not required to bear burden of proof of duress).   Where the alleged error is the failure

26 to give an instruction, the burden on the petitioner is "especially heavy: because "[a]n omission, or

27 an incomplete instruction is less likely to be prejudicial than a misstatement of the law.  *Henderson*

28 *v. Kibbe*, 431 U.S. 145, 155 (1977).  As a general principle, jury instructions are matters of state law

1  and involve no constitutional question absent a denial of due process. *Cooks v. Spalding*, 660 F.2d

2  738, 739 (9th Cir. 1981); *Shepherd v. Nelson*, 432 F.2d 1045, 1046 (9th Cir. 1970).

3      To begin, petitioner cites no clearly established federal law to support his contention that

4  "force" or "forcibly" must be defined.  On this basis alone the claim can be denied. *Carey v.*

5  *Musladin*, 127 S.Ct. 649, 653-54.

6      Nor has petitioner shown that the state court's determination that neither of these terms

7  are technical or peculiar to the law is an unreasonable determination of the facts in light of the

8  evidence presented before the trial court.  28 U.S.C. § 2254(d)(2).  Under California law, only terms

9  with a "technical meaning peculiar to the law" must be defined by the trial court. *People v. Bland*,

10  28 Cal.4th 313, 121 Cal.Rptr.2d 546, 48 P.3d 1107 (2002).  The Ninth Circuit is in accord. *United*

11  *States v. Somsamouth*, 352 F.3d 1271, 1275 (9th Cir. 2003) (A trial court "need not define common

12  terms that are readily understandable to the jury.")

13      The state appellate concluded that the terms "force" or "forcible" have no technical

14  meaning different from its common meaning and thus there was no sua sponte duty to define these

15  terms for the jury.  The California Supreme Court reached the same conclusion. *People v. Griffin*,

16  33 Cal.4th 1015, 1028 (2004). The conclusion was reasonable.

17      As the state court of appeal reasoned:

18  The jury was instructed orally and in writing that counts 1 and 2 accused defendant of
   aggravated sexual assault on a child under the age of 14. Underlying count 1 was the
19  alleged "forcible rape" of P. "Every person who engages in an act of sexual intercourse
   with another person who is not the spouse of the perpetrator accomplished against the
20  person's will by means of force, violence, duress, menace, or fear of immediate and
   unlawful bodily injury to that person, is guilty of the crime of rape in violation of Penal
21  Code section 261, subdivision (a)(2)." (CALJIC No. 10.00.) The jury was instructed that
   one of the elements of the crime was that the act of intercouse "was accomplished by
22  means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury
   to the alleged victim." CALJIC No. 10.00.) The jury was given the statutory definitions
23  of "duress" and "menace" (CALJIC No. 10.00) found in the rape statute, Penal Code
   section 261, subdivision (b).
24
   The jury was instructed that underlying count 2 was the alleged "forcible oral copulation"
25  of P. "Every person who participates in an act of oral copulation against the will of the
   victim by means of force, violence, duress, menace or fear of immediate and unlawful
26  bodily injury on the victim or any other person is guilty of the crime of unlawful oral
   copulation in violation of the Penal Code section 288a, subdivision (c)(2)." (CALJIC No.
27  10.10.) The jury was instructed that one of the elements of the crime was that the act "was
   accomplished by means of force, violence, duress, menace, or fear of immediate and
28  unlawful bodily injury to the alleged victim." (CALJIC No. 10.10.)

1  The jury was not given the definition of force derived from case law. "The term 'force'
2  means physical force that is substantially different from or substantially greater than that
   necessary to accomplish the lewd act itself." (CALJIC No. 10.42.)

3  *People v. Elam* (2001) 91 Cal.App.4th 298, 110 Cal.Rptr.2d 185 (*Elam* ) explained: "The
   trial court ... has a sua sponte duty to define for the jury any term having a technical
4  meaning peculiar to the law. (*People v. Howard* (1988) 44 Cal.3d 375, 408, 243 Cal.Rptr.
   842, 749 P.2d 279; *People v. Pruett* (1997) 57 Cal.App.4th 77, 81, 66 Cal.Rptr.2d 750.)
5  As noted in *People v. Estrada* (1995) 11 Cal.4th 568, 574, 46 Cal.Rptr.2d 586, 904 P.2d
   1197, a word or phrase has a technical, legal meaning that requires clarification only if it
6  ''has a definition that *differs* from its nonlegal meaning.'' (Italics in the original.)" (*Id.* at
   p. 306, 46 Cal.Rptr.2d 586, 904 P.2d 1197.)
7
8  *People v. Pitmon* (1985) 170 Cal.App.3d 38, 216 Cal.Rptr. 221 (*Pitmon*), on which
   defendant relies, concluded, "as we have previously determined in *Cicero*, force, as used
9  in section 288, subdivision (b), offenses does have a specialized meaning not readily
   known to the average lay juror-i.e., ''physical force [that is] substantially different from
10 or substantially greater than that necessary to accomplish the lewd act itself.'' ( *People
   v. Cicero* [ (1984) ] 157 Cal.App.3d [465] at p. 474, 204 Cal.Rptr. 582.)" ( *Id.* at p.52, 216
   Cal.Rptr. 221.) Accordingly, trial courts should give this definition *sua sponte*. ( *Ibid.*)
11
12 *Elam,* a case involving assault with intent to commit forcible oral copulation, has
   disagreed with *Pitmon* in the following dictum. "The force necessary in sexual offense
13 cases is 'physical force substantially different from or substantially in excess of that
   required''' for the commission of the sexual act. (*People v. Senior* (1992) 3 Cal.App.4th
14 765, 774, 5 Cal.Rptr.2d 14; accord, *People v. Mom* (2000) 80 Cal.App.4th 1217, 1224, 96
   Cal.Rptr.2d 172.) One nonlegal meaning of force is ''to press, drive, attain to, or effect
15 as indicated *against resistance* ... by some positive *compelling* force or action.''
   (Webster's 3d New Internat. Dict. (1993) p. 887, col. 2, italics added.) Another is ''to
16 achieve or win by strength in struggle or violence.'' (*Ibid.*) These definitions do not differ
   in any significant degree from the legal definition. It thus is doubtful whether the court
17 ever has a *sua sponte* duty to define ''force'' in a sexual offense case containing the
   element that it be accomplished against the will of the victim. (But see *People v. Pitmon,
18 supra,* 170 Cal.App.3d 38, 52, 216 Cal.Rptr. 221.)[¶] In any event, defendant was not
   charged with forcible oral copulation but with assault with *intent* to commit forcible oral
19 copulation." (*Elam, supra,* 91 Cal.App.4th at p. 306, 110 Cal.Rptr.2d 185.)

20 It is established that "force" and "fear" as used in the definition of robbery "have no
   technical meaning peculiar to the law and must be presumed to be within the
21 understanding of jurors." (*People v. Anderson* (1966) 64 Cal.2d 633, 640, 51 Cal.Rptr.
   238, 414 P.2d 366.) The California Supreme Court is currently considering whether
22 "force" has a specialized meaning requiring a jury instruction in a rape case. (*People v.
   Griffin* review granted October 23, 2002, S109734.)

23 This court has adopted the *Cicero* explanation of "force" in lewd touching cases. *People
   v. Bolander* (1994) 23 Cal.App.4th 155, 158-159, 28 Cal.Rptr.2d 365 (*Bolander* ); *People
24 v. Gilbert* (1992) 5 Cal.App.4th 1372, 1381, 7 Cal.Rptr.2d 660; *People v. Senior, supra,*
   3 Cal.App.4th 765, 774, 5 Cal.Rptr.2d 14; *People v. Schulz* (1992) 2 Cal.App.4th 999,
25 1004, 3 Cal.Rptr.2d 799; *People v. Quinones* (1988) 202 Cal.App.3d 1154, 1158, 249
   Cal.Rptr. 435; but see Mihara, J. concurring in *Bolander, supra,* at p. 164, 28 Cal.Rptr.2d
26 365.) The California Supreme Court has implicitly approved this description in a rape
   case. (See *In re John Z.* (2003) 29 Cal.4th 756, 763, 128 Cal.Rptr.2d 783, 60 P.3d 183.)
27 We conclude that the term "force" as used in section 261, subdivision (a), and section
   288a, subdivision (a) does not have a technical meaning different from its common
28 meaning. (See *People v. Anderson, supra,* 64 Cal.2d 633, 640, 51 Cal.Rptr. 238, 414 P.2d

1   366 ["force," as used in the definition of robbery, has no technical meaning peculiar to the
law and must be presumed to be within the understanding of jurors]; *People v. Bolander,*
2   *supra,* 23 Cal.App.4th 155, 164, 28 Cal.Rptr.2d 365 [conc. opn. of Mihara, J.] ["force,"
as used in the definition of rape, is similar to the definition of "force" used in the
3   definition of robbery].) One commonly understood meaning of the term "force" is
violence, compulsion, or constraint exerted upon or against a person or thing. (Merriam-
4   Webster's Collegiate Dict. (10th ed.1999) p. 455.) A reasonable juror would understand
that it is necessary to find that the defendant used violence, compulsion, or constraint in
5   order to convict the defendant of rape by means of force. A reasonable juror would further
understand that it is *not* necessary to use violence, compulsion, or constraint when
6   engaging in an act of consensual sexual intercourse. (See *People v. Cicero, supra,* 157
Cal.App.3d at p. 475, 204 Cal.Rptr. 582 [in rape cases, force plays merely a supporting
7   evidentiary role, as necessary only to insure an act of intercourse has been undertaken
against a victims will].) Because no violence, compulsion, or constraint is necessary to
8   accomplish an act of consensual sexual intercourse or oral copulation, a reasonable juror
would understand that he or she had to find that defendant used force substantially
9   different from or substantially greater than the level of force necessary to accomplish acts
of consensual sexual intercourse and oral copulation.

10
We conclude the instructions on forcible rape and forcible oral copulation adequately
11  covered the "force" element and that the trial court had no sua sponte duty to further
define the terms "force" or "forcible." In light of this conclusion, we do not consider
12  whether an error in this regard was harmless.

13  Exh. C, at 8-11.

14       The state court's analysis is not unreasonable.  As the court noted, the common definition

15  of  "force" is "violence, compulsion, or constraint exerted upon or against a person or thing."

16  *Merriam- Webster's Collegiate Dict.* (10th ed. 1999) at 454.  A reasonable juror would understand

17  that it is necessary to find that the defendant used "violence, compulsion or constraint," in order to

18  convict him of rape by means of force and forcible oral copulation.  A reasonable juror would also

19  understand that an act of consensual sexual intercourse or oral copulation does not  require

20  "violence, compulsion, or constraint." Ergo a jury in finding that the act was accomplished by force

21  would necessarily find that it was force substantially different from or substantially greater than the

22  level of force needed to accomplish an act of consensual sexual intercourse or oral copulation.

23  Petitioner is not entitled to relief on this claim.

24                                              **IV.**

25       **THE STATE COURT WAS NOT UNREASONABLE IN REJECTING
         PETITIONER'S CLAIM THAT HE WAS DENIED DUE PROCESS BY**
26       **THE FAILURE TO INSTRUCT THE JURY THAT IT COULD ONLY
         CONVICT HIM OF THE LESS SERIOUS OF TWO OFFENSES**
27

28       Petitioner contends in Claims six, seven, and eight that the trial court's failure to instruct

1    the jury that it could only convict petitioner of the less serious of two offenses violated due process.

2    The claim lacks merit and was reasonably rejected by the state court.

3    　　　　The state court rejected the claim reasoning as follows.

4    　　2.  The alternative counts and lesser included offenses

5    　On appeal defendant contends that the court should have clarified for the jury that counts
6    4 and 5, which charged lewd touching of a minor, were alternative charges to counts 1 and
     2, which charged aggravated sexual assault involving forcible rape and forcible oral
7    copulation, and that the jury could not convict defendant of both alternatives. Defendant
     also contends that the court should have instructed the jury about lesser offenses included
8    within counts 1 and 2.

9    　In opening argument, the prosecutor told the jury the following. "Counts 4 and 5, just
     specifically 288 counts. Those are charged in the alternative." Count 1 is "on that first
10   occasion where he takes her upstairs and there's the deal with Marcel being in the bed....
     If you believe that is rape. I urge you to find him guilty as to Count 1.

11   "Count 4 is an alternative charge. It does not have all the elements of Count 1. There's no
12   force required in Count 4. It's only did you do a lewd or lascivious sexual touching on a
     child under the age of 14. If you decide on Count 1 that it was not rape, but that that in
13   fact occurred, he had sex with her on that occasion, you fill find not guilty as to Count 1
     because you didn't find force, no rape. You believe there was a sexual contact find him
14   guilty as to Count 4, the same thing as it relates to Count 2.

15   "Count 2 is forcible oral copulation. If you believe he orally copulated her on that couch
     when he picked up her skirt you do not believe there was a force involved, you find him
16   guilty of Count 5 and not guilty of Count 2. If you believe there was force involved and
     he orally copulated her, you find him guilty of Count 2.

17   "Now, as to Count 4 and Count 5. You find him guilty as to Count 1 and 2 you would also
18   find him guilty as to Count 4 and 5. Once more. Count 1 and Count 2, if you do not find
     force, okay, but you believe that he had sex with her the occasion in February and that he
19   orally copulated her but you do not believe there is force, you find him not guilty of Count
     1 and Count 2, but guilty of Count 4 and Count 5. If you believe there was force as to
20   Count 1 and Count 2, you believe that that happened, you find him guilty on both those
     counts, and Counts 4 and 5. There's a different element as to Count 1 and Count 2. That's
21   the force, violence and duress."

22   Defense counsel argued to the jury. "Count 4 is the same as Count 1, refers to the same
     alleged incident, which I'm going to suggest to you is not true, has not been proven."
23   Count 5 "is basically referring to the same incident [as count 2] only a different way of
     stating it without force." Defense counsel argued that there was no force involved in the
24   crimes.

25   In rebuttal, the prosecutor argued, "as to Count 1 and 2, defendant used duress and force
     to have his way with the girl. If you had issues with the amount of duress or force, look
26   at Count 4 and 5."

27   In the jury's absence, defense counsel stated: "Your Honor, I had originally requested
     LIO, lesser included offense, to Counts 1 and 2 as straight [ sic ] 288(a) offense. Counsel
28   made it crystal clear, I'll reinforce that, that basically Counts 4 and 5 are the same event.
     Basically it would be a 654 issue. We did not give the LIO instruction that requires-

1    defined beyond a reasonable doubt that Count 1, for instance, was not true before they
     even reach Count 4. That is confusing."

2

3    "I did not request a simple battery count lesser included offense instruction because I did
     not feel it was supported by the record in any fashion."

4    The court stated: "Thank you. The Court finds that it is not supported by the evidence."

5    When a person is charged with a greater offense and a lesser included offense in alternate
     counts, the jury should be instructed that it can only convict the defendant of one of the

6    offenses. (CALJIC No. 17.03.) (*People v. Wilson* (1975) 50 Cal.App.3d 811, 815, 123
     Cal.Rptr. 663.) The jury should also be instructed that if it entertains a reasonable doubt

7    about which offense the defendant committed, it can only convict the defendant of the
     lesser offense. (CALJIC No. 8 .72.) ( *People v. Dewberry* (1959) 51 Cal.2d 548, 555, 334

8    P.2d 852; *People v. Aikin* (1971) 19 Cal.App.3d 685, 703-704, 97 Cal.Rptr. 251,
     disapproved on other grounds in *People v. Lines* (1975) 13 Cal.3d 500, 512-514, 119

9    Cal.Rptr. 225, 531 P.2d 793.)

10   As the jury was instructed here, the crime of lewd touching involves the specific intent of
     arousing, appealing to, or gratifying the lust or passions or sexual desires of the person of

11   the defendant or the child. (CALJIC Nos. 10.42.5, 3.31.) Both forcible rape and forcible
     oral copulation are general intent crimes. (CALJIC No. 3.30.) Thus, lewd touching is not

12   a lesser included offense of rape or oral copulation. (*People v. Griffin* (1988) 46 Cal.3d
     1011, 1030, 251 Cal.Rptr. 643, 761 P.2d 103; *People v. Montero* (1986) 185 Cal.App.3d

13   415, 435-436, 229 Cal.Rptr. 750; cf. *People v. Muniz* (1989) 213 Cal.App.3d 1508, 1517,
     262 Cal.Rptr. 743.) The prosecutor accurately informed the jury that the defendant could

14   be convicted of all these counts. We conclude there was no error in not giving sua sponte
     these instructions regarding "alternative" counts 4 and 5.

15

16   Exh. C, at  12-14.

17       The Double Jeopardy Clause precludes a defendant from being convicted of both an

18   offense and a lesser included offense predicated on the same act.  *See Rutledge v. United States*, 517

19   U.S. 292, 297 (1996).  Petitioner's claim of error depends on his  erroneous premise that Count 4

20   and Count 5 are lesser included offenses of Count 1 and 2.  As the state court made clear, they are

21   not.  The state court's determination of state law is binding on this Court.  *Aponte v. Gomez,* 993

22   F.2d 705, 707 (9th Cir. 1999).  Petitioner is not entitled to relief on this claim.

23                                        **V.**

24   **PETITIONER WAS NOT DENIED DUE PROCESS BY THE TRIAL
     COURT'S FAILURE TO INSTRUCT ON LESSER INCLUDED**

25   **OFFENSES**

26       Petitioner contends in Claim 9 that the trial court had a *sua sponte* duty to instruct the jury

27   on lesser included offenses and that its failure to do so denied him of due process.  The claim lacks

28   merit.

Memorandum Of Points And Authorities In Support Of Answer - C 07-5133 RMW (PR)

1        The claim is not cognizable. "Under the law of this circuit, the failure of a state trial court

2    to instruct on lesser included offenses in a non-capital case does not present a federal constitutional

3    question." *Windham v Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998). In addition, there is no clearly

4    established Supreme Court authority requiring such instructions; the Court has held only that a

5    defendant may be entitled to lesser included instructions in a capital case, declining to decide

6    whether its holding extended to non-capital cases. *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980).

7    Further, because circuit courts are split as to whether *Beck* applies to non-capital cases, habeas relief

8    is precluded under the doctrine of *Teague v. Lane*, 489 U.S. 288 (1989). *Solis v. Garcia*, 219 F.3d

9    922, 928-29 (9th Cir. 2000). Because of the circuit split there is no clearly established Supreme

10   Court authority permitting habeas relief under the AEDPA. *See Kane v. Garcia Espitia*, 546 U.S.

11   9 (2005) (per curiam).

12                                                                   **VI.**

13       **THE STATE COURT WAS NOT UNREASONABLE IN REJECTING**
     **PETITIONER'S CLAIM THAT HE WAS DENIED THE ASSISTANCE**
14   **OF COUNSEL BY COUNSEL'S FAILURE TO PRESENT EVIDENCE**
     **OF AN ALIBI DEFENSE OR IN CONDUCTING HIS PRELIMINARY**
15   **HEARING; NOTIFYING PETITIONER OF THE CHARGES; AND IN**
     **FAILING TO CHALLENGE THE SPECIFICITY OF THE CHARGES**

16

17       Petitioner contends in Claim 10 that his trial attorney was ineffective in failing to fully

18   investigate or present evidence of petitioner's alibi defense. Pet. Ground 10. He also contends in

19   Claim 11, that trial counsel was ineffective in "failing to conduct an adequate preliminary

20   examination." Pet. Ground 11. He argues that counsel should have conducted a more vigorous cross-

21   examination and after petitioner was held to answer should have filed a motion to dismiss given that

22   the victim recanted her initial allegations at the preliminary hearing. Last, he contends in Claim 12,

23   that counsel failed to inform him of the charges or to sufficiently challenge the "specificity" of the

24   charges. Pet. Ground 12. The claims are baseless

25       In order to establish that counsel was ineffective, petitioner bears the burden of showing

26   that counsel's performance fell below an objective standard of reasonableness under prevailing

27   professional norms, and that there is a reasonable probability the result of the proceeding would have

28   been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 695-696 (1984). Petitioner must

plead and prove both prongs of this test. *Hasan v. Galaza*, 254 F.3d 1150, 1154 (9th Cir. 2001). In considering the first prong of the test, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Strategic decisions by counsel are "virtually unchallengeable" *Id*. at 690. As to the second prong, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id*. at 694. In order to prevail the petitioner must "affirmatively prove prejudice." *Id*. at 693. The reviewing court need not assess counsel's performance where it is clear that petitioner cannot show the requisite prejudice. *Id*. at 697; *Williams v. Calderon,* 52 F.3d 1465, 1470 n. 3 (9th Cir. 1995).

There is no one right way for an attorney to provide effective assistance. *Strickland* at 689. The Supreme Court has "consistently declined to impose mechanical rules on counsel." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). Rather, the "Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Id*. at 479. Thus, "the test is not whether another lawyer, with the benefit of hindsight, would have acted differently, but whether '`counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998) (quoting *Strickland* at 687, 689). "The relevant inquiry under *Strickland* is not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998).

Further, for petitioner to succeed, "he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 698-699 (2002). Rather, petitioner must show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner. *Id*. Thus, on federal habeas review of a claim of ineffective assistance, judicial review must be "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).        Judged by these principles, petitioner's claims fail.

A defense of alibi would have been unavailing. Recall, petitioner both confessed and

made damming admissions during the pretext call with Paris to the effect that he had sexual relations with her.  Having made such statements, an alibi defense would not have succeeded.  Moreover, the evidence offered to support an alibi defense, i.e., that he was purportedly residing elsewhere during the charged period provides, in fact, no "alibi."  Nothing proffered by petitioner is inconsistent with Paris' descriptions of when and where the sexual assaults occurred or precludes the jury finding he committed the sexual offenses charged.

Nor does Paris' declaration recanting her statements to police add value.  Paris recanted at the preliminary hearing and at trial before the jury and was impeached with her initial statement.  The jury had the opportunity to evaluate her credibility and found her recantation testimony unbelievable. Her declaration to the same effect would have been redundant.   Given the evidence, counsel's was not unreasonable in failing to pursue an alibi defense.   For the same reasons, petitioner can not establish prejudice.   The state court's rejection of this claim was not an unreasonable application of *Strickland.*

Nor is there any merit to petitioner's complaints about counsel's performance in connection with the preliminary hearing.   While the right to counsel under the Sixth Amendment does extend to the preliminary hearing, *see Coleman v. Alabama*, 399 U.S. 1, 9 (1970), a review of the transcript reveals that defense counsel vigorously cross-examined both the complaining witness and the arresting officer, drawing attention to the weaknesses in their testimony.  Petitioner fails to explain what more she could have done.

As for petitioner's assertion that counsel should have brought a motion to dismiss, he fails to proffer the basis for such a motion.  It is well established that the failure to a motion is not ineffectiveness if making the motion would be futile.  *James v. Borg,* 24 F.3d 20 (9th Cir. 1994).  In other words counsel is not required to bring an unavailing motion.  *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir 1985).  To hold a defendant to answer for charges the state must prove probable cause.  Probable cause is shown if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused.  *Jackson v. Superior Court*, 62 Cal.2d 521, 525 (1965). An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been

1    committed and the accused is guilty of it. *People v. Crosby*, 58 Cal.2d 713, 719 (1962). Here, the

2    statements of the complaining witness, taken together with petitioner's confession, were sufficient

3    evidence , despite the victim's subsequent recantation, to meet this standard and hold petitioner to

4    answer on the charges. Counsel was not incompetent for failing to challenge that finding.

5        Last, there is no merit to petitioner's assertion that counsel was ineffective in failing to

6    challenge the purported lack of specificity regarding the charged crimes.

7        An Information serves its due process function if it informs the defendant of the nature of

8    the charges and the approximate time and place of commission. *See People v. Gordon*, 165

9    Cal.App.3d 839, 868 (1985). The preliminary hearing serves to focus upon the testimony which

10    will be offered at trial and to inform the defendant more specifically what proof he must meet.

11        Here, the complaint and information alleged that petitioner's crimes occurred between

12    February 1, 2001 and April 23, 2001. At the preliminary hearing  the prosecution presented

13    evidence that victim Paris reported to Detective Powell that on the night her mother was in Reno,

14    petitioner stuck his fingers in her vagina, and forced her to have sex with him. She told  the

15    detective that a couple of weeks later he forcibly orally copulated her. She told him that he orally

16    copulated her on ten separate occasions between February and June, and had sexual intercourse with

17    her four times during the same period. She specified where the acts took place and described how

18    they occurred. At the same hearing, the victim recanted these statements. *See* CT 9-25. Detective

19    Powell testified that the victim had described these incidents and that petitioner had admitted having

20    sex with the minor approximately fifteen times between February and June of 2001. *See* CT 25-45.

21    No more notice was required. Counsel had no basis to argue that he did not have sufficient notice

22    of the charges. His failure to make such a frivolous motion was neither ineffective or prejudicial.

23    The state court reasonably rejected this claim.

24                      **VII.**

25    **THE STATE COURT WAS NOT UNREASONABLE IN REJECTING
26    PETITIONER'S CLAIM THAT APPELLATE COUNSEL WAS
      INEFFECTIVE**

27        Petitioner, in a one-line heading, asserts that appellate counsel was ineffective in failing

28    to make the claims of error presented by petitioner in this petition. The claim lacks merit.

1    The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant

2    the effective assistance of counsel on his first appeal as of right. *See Evitts v. Lucey,* 469 U.S. 387,

3    391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the

4    standard set out in *Strickland v. Washington*, 466 U.S. 668.  *Miller v. Keeney*, 882 F.2d 1428, 1433

5    (9th Cir.1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir.1986). A defendant therefore must

6    show that counsel's advice fell below an objective standard of reasonableness and that there is a

7    reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on

8    appeal. *Miller*, 882 F.2d at 1434 & n. 9 (citing *Strickland,* 466 U.S. at 688, 694).  Stated differently,

9    claims of ineffective assistance of appellate counsel will fail because a petitioner cannot show that

10   he was prejudiced by the failure to raise an untenable issue on appeal. *Turner v. Calderon*, 281 F.3d

11   851, 872 (9th Cir. 2002).

12        The burden of proving ineffective assistance of counsel is on the defendant.  *Strickland,*

13   466 U.S. at 688.  In making a determination on counsel's performance, a court must exercise

14   deferential scrutiny. *Id* at 689.  Courts have uniformly recognized that appellate counsel will often

15   fail to raise an issue because she foresees little or no likelihood of success on that issue.  Indeed, as

16   many courts have observed  the weeding out of weaker issues is widely recognized as one of the

17   hallmarks of effective appellate advocacy.  *Bailey v. Newland*, 263 F.3d 1022, 1028-9 (9th Cir.

18   2001).  Moreover, appellate counsel has no duty to raise every nonfrivolous issue requested by the

19   petitioner, when the counsel's professional judgment dictated otherwise. *Jones v. Barnes*, 103 S.Ct.

20   3308, 3312-14 (1983).

21        Judged by these principles the claim fails.  As discussed throughout, none of the claims

22   presented by petitioner have merit.  Appellate counsel was not ineffective nor petitioner prejudiced

23   by  appellate counsel's failure to present weak and frivolous issues.

24                                                    **VIII.**

25        **THE STATE COURT REASONABLY REJECTED PETITIONER'S
     CLAIM OF *BRADY* ERROR**

26

27        Petitioner contends in Claim 13, that the prosecutor failed to disclose exculpatory evidence

28   in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  Specifically, he contends that the

1  prosecution "with held a favorable Child Protection Service Investigation Report" wherein Child

2  Protective Services conducted an investigation and "found that petitioner had not committed any

3  such abuse, according to the sworn declarations of Monica Gordon and Paris Minor." Pet. at Ground

4  13, p. 72.  The claim lacks merit.

5      In *Brady v. Maryland*, 373 U.S. 83, 87, the Supreme Court held that "the suppression by

6  the prosecution of evidence favorable to an accused upon request violates due process where the

7  evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the

8  prosecution.  The Supreme Court identified three components of a *Brady* violation:  1) favorable

9  evidence that was exculpatory or impeaching, 2) was suppressed by the State willfully or

10  inadvertently, and 3) with resulting prejudice.  *Strickler v. Greene*, 527 U.S. 263, 281-2 (1999).

11      To succeed on such a claim, however, petitioner must identify what was undisclosed.

12  Mere speculation that the government had exculpatory evidence is insufficient for a *Brady* non-

13  disclosure claim.  *Phillips v. Woodford,* 267 F.3d 966, 987 (9th Cir. 2001) (failed to show that report

14  existed or that it contained exculpatory evidence); *United States v. Dierling*, 131 F.3d 722, 726 (8th

15  Cir. 1997).

16      Here, petitioner offers nothing more than speculation. As noted by the Santa Clara

17  Superior Court petitioner does not provide a copy of  the report by CPS to support his claim and

18  there is no evidence in the record to suggest that such a report exists. Pet. Exh. I.  His reference to

19  the victim's and the victim's mother's statements do not support the claim.  Their statements, made

20  after trial,  simply reiterate their testimony.  The substance of their declarations was known to the

21  defense and is cumulative.  The state court was not unreasonable in rejecting the claim.

22                      **IX.**

23  **PETITIONER'S APPARENT CLAIM OF ACTUAL INNOCENCE IS
   NOT COGNIZABLE**

24

25      Petitioner argues in conclusion that he is actually innocent, citing *Schlup v. Delo*, 513 U.S.

26  298 (1995).  To the extent this is intended as a freestanding claim, it fails to state  an independent

27  ground for federal habeas relief.  *Herrera v. Collins*, 506 U.S. 390, 400 (1993) (claims of actual

28  innocence  have never been held to state a ground for federal habeas relief absent an independent

1   constitutional violation occurring in the underlying state criminal proceeding).  To the extent it is

2   simply hyperbole, we have previously addressed his specific claims of error and have explained why

3   they lack merit.

4   ///

5   ///

6   ///

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CONCLUSION**

2

Accordingly, respondent respectfully requests that the petition be denied.

3

Dated:  June 26, 2008

4

Respectfully submitted,

5

EDMUND G. BROWN JR.
Attorney General of the State of California

6

DANE R. GILLETTE
Chief Assistant Attorney General

7

GERALD A. ENGLER
Senior Assistant Attorney General

8

GREGORY A. OTT
Deputy Attorney General

9

10

11

/s/ Juliet B. Haley

12

JULIET B. HALEY
Deputy Attorney General

13

Attorneys for Respondent

14

20118878.wpd
SF2007403162

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  GREGORY A. OTT
   Deputy Attorney General
5  JULIET B. HALEY, State Bar No. 162823
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5960
    Fax:  (415) 703-1234
8   Email:  Juliet.Haley@doj.ca.gov

9  Attorneys for Respondent

10

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                     SAN JOSE DIVISION

14

15  JOHNNY L. SMALL,                          C 07-5133 RMW (PR)

                                Petitioner,   **NOTICE OF LODGING OF,
16                                            AND INDEX TO, EXHIBITS**

17        v.

18  M.S. EVANS, Warden,

                               Respondent.
19

20        Respondent hereby submits the following exhibits to be lodged with the Clerk of the Court

21  in support of the Answer and supporting memorandum.

22            **RESPONDENT'S INDEX TO LODGED EXHIBITS**

23    EXHIBIT A:  Clerk's Transcript (Volume 1, Volume 2, and Augmentation);

24    EXHIBIT B:  Reporter's Transcript (Volume 2, Volume 4, Volume 5, Volume 6, and

25                Augmentation);

26    EXHIBIT C:  State Court Opinion;

27    EXHIBIT D:  Appellant's Opening Brief;

28

1      EXHIBIT E:   Respondent's Brief;

2      EXHIBIT F:   Appellant's Reply Brief;

3      EXHIBIT G:   Petition for Rehearing;

4      EXHIBIT H:   Order Modifying Opinion and Denying Rehearing;

5      EXHIBIT I:   Petition for Review;

6      EXHIBIT J:   California Appellate Courts Case Information Indicated that Petition for Review

7              Denied on March 17, 2004.

8      EXHIBIT K:   Petition for Writ of Habeas Corpus;

9      EXHIBIT L:   Order Denying Petition for Writ of Habeas Corpus.

10

11       Dated: June 26, 2008

12                  Respectfully submitted,

13                  EDMUND G. BROWN JR.
                   Attorney General of the State of California

14                  DANE R. GILLETTE
                   Chief Assistant Attorney General

15                  GERALD A. ENGLER

16                  Senior Assistant Attorney General

                   GREGORY A. OTT

17                  Deputy Attorney General

18

19                  /s/ Juliet B. Haley

20

                   JULIET B. HALEY

21                  Deputy Attorney General
                   Attorneys for Respondent

22

23

    20118923.wpd

24    SF2007403162

25

26

27

28